THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HOWARD ANDREWS, Defendant-Appellant.

First District (2nd Division)    No. 80-103

Opinion filed April 14, 1981.

James J. Doherty, Public Defender, of Chicago (Emily Eisner and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Gordon A. Greenberg, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was convicted by a jury of burglary and sentenced to 5 years in the Department of Corrections. Defendant asserts on appeal that his conviction should be reversed because of an improper accountability instruction and, alternatively, that his sentence should be vacated because

the trial court failed to discretionarily consider sentencing him under provisions of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq.*). We affirm the conviction, vacate the sentence and remand the cause for a new sentencing hearing.

Juan Suarez, owner of the Armitage Theater in Chicago, testified for the State that at 11:30 p.m. on February 19, 1979, he locked the theater's storage room and left for home. At 3:30 a.m. on February 20, 1979, the security company which monitors the theater's burglar alarm system notified him and the police that the alarm had been activated. He telephoned Luiz Berrios, the theater manager, and both proceeded to the theater where they discovered that the storage room door had been forcibly opened. Four or five crates of candy, valued at approximately $300, had been removed from and stacked outside the storage room. A door to the roof had been forced open. When the police arrived a few minutes later, he showed them the crates and the damaged doors. Berrios testified that on February 20, 1979, he locked all the theater doors and turned on several security lights before leaving for home at 12:30 a.m.; his testimony concerning the subsequent events substantially corroborates that of Suarez.

Chicago Police Officer Joseph Angarone testified that on February 20, 1979, he and his partner, Officer Thomas Jones, were on patrol duty when, at 3:15 a.m. they received a radio report of a burglary in progress at the Armitage Theater. They arrived in front of the theater about one minute later and observed a man, identified in court as defendant, standing in the middle of the theater lobby. After seeing the squad car, defendant turned and ran toward the rear of the theater where another man joined him. The officers drove toward the rear of the building and saw the same two men flee from a rear exit and run down the alley. The officers then gave chase on foot, temporarily losing sight of the suspects as they turned at an intersection in the alley. After reaching the intersection, the officers began searching the alley where they found defendant hiding behind some garbage cans, but were unable to find his companion. Defendant was placed under arrest and then taken back to the theater where Suarez and Berrios showed the officers the doors which had been forced open and the candy crates which had been removed from the storage room. There were footprints in the snow on the roof leading to the roof door. Officer Thomas Jones testified to substantially the same sequence of events.

The defense presented only one witness, Danny Hayes, who testified that from 10 p.m. on February 19 until 3 a.m. on February 20, 1979, defendant was watching television at Hayes' apartment.

At the instruction conference, the State tendered Illinois Pattern Jury Instructions, Criminal, No. 5.03 (1968), permitting the jury to find·

defendant guilty on an accountability theory, which was allowed over defendant's objection. The jury found defendant guilty of burglary. At defendant's sentencing hearing, conducted on January 4, 1980, the State argued in aggravation that defendant had been convicted of robbery and theft in 1975 and battery in 1976, had violated parole in 1976 and 1978, and had committed the burglary involved herein while still on parole. Defense counsel then stated that defendant had been using drugs for five or six years; that he was in need of some form of drug program; and that was what he "* * * really would like to have." Defendant then approached the bench on his own behalf and stated that he needed treatment for his drug and alcohol problems. A similar statement was also contained in defendant's social investigation report. The trial court then sentenced defendant to 5 years in the penitentiary without indicating whether or not consideration had been given to employment of the Dangerous Drug Abuse Act.

■■ Defendant first argues that the accountability instruction was improper because the State's evidence, if believed, showed that he entered the theater through the roof with the intent to commit a theft and that he therefore acted as a principal, not as an accomplice, under section 19—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 19—1). Defendant claims that in submitting the accountability instruction under these circumstances, the State was impermissibly changing its burden of proving a requisite intent to commit theft or a felony, citing *People v. Lusietto* (1976), 41 Ill. App. 3d 205, 208, 353 N.E.2d 385. The State correctly responds that an accountability instruction which is inappropriately given does not constitute reversible error where sufficient evidence existed from which the jury could have found defendant guilty as a principal. (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226; *People v. Dillard* (1979), 68 Ill. App. 3d 941, 386 N.E.2d 416, *cert. denied sub nom. McNair v. Illinois* (1979), 444 U.S. 935, 62 L. Ed. 2d 193, 100 S. Ct. 282.) Any resultant error in giving this instruction in similar circumstances has been deemed harmless. (*People v. King* (1980), 88 Ill. App. 3d 548, 554-55, 410 N.E.2d 1070; *People v. Lusietto*.) We find no reversible error here.

■■ Defendant asserts next that he was eligible for treatment under section 8 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.8) (hereinafter Act) and that the trial court improperly sentenced him without first considering the alternative of treatment under section 10 of the Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.10) instead of imprisonment. The Act presents a supersession to the usual criminal justice procedures, allowing a criminal defendant with a drug abuse problem to avoid the regular sentencing alternatives available under the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*)

(hereinafter the Corrections Code) (*People v. Phillips* (1977), 66 Ill. 2d 412, 416, 362 N.E.2d 1037). Defendant maintains that because he advised the court that he had a serious drug problem and requested drug treatment, and the trial court had reason to believe from his attorney's comments and the social investigation report that he was an addict, the record must show that the trial court exercised its discretion, a fact absent herein, and therefore the cause should be remanded for resentencing. The issue thus presented is whether the trial court was required to exercise its discretion under section 10 of the Act in order to consider treatment as an alternative to the traditional options of the Corrections Code. Defendant relies primarily on *People v. Melson* (1976), 36 Ill. App. 3d 71, 343 N.E.2d 258, and *People v. Miller* (1976), 43 Ill. App. 3d 290, 356 N.E.2d 1345, which hold that trial courts are required to consider treatment under the Act when there is reason to believe that defendant is an addict or defendant states that he is an addict. Further, the record must show that the trial court properly employed its discretion by considering this alternative and the absence thereof requires a remand for a new sentencing hearing. See also *People v. Warren* (1977), 69 Ill. 2d 620, 629, 373 N.E.2d 10.

The State counters with *People v. Kuesis* (1980), 83 Ill. 2d 402, 415 N.E.2d 323, where defendant's presentence report indicated that he had used heroin for a number of years, but he had made no affirmative election to be treated under the Act. There, as here, defendant was sentenced to the Department of Corrections, and thereafter argued on appeal that the trial court failed to consider whether he should have been placed in a drug treatment program. The supreme court affirmed, holding that the trial court "* * * need not exercise its discretion in the first instance unless the defendant applied for probation under the Act by *filing a petition*." (Emphasis added.) (83 Ill. 2d 402, 406.) The State here contends that because defendant did not file a written petition, the trial court had no need to consider the issue. The record reveals that the public defender advised the court during the sentencing hearing that defendant "* * * knows he is in need of some form of drug program and that's what he really would like to have, * * *" and that defendant "* * * pointed out through the P.S.I. here's someone who has a goal of getting a job and getting some kind of drug treatment somewhere." Defendant addressed the court prior to sentencing and noted several times his addiction to drugs and alcohol. At one point he stated,

> "Your Honor, I need job training, but I also need treatment for my drug and alcohol problems * * *. I need the drug program to clear myself out and to kick any habit so I will be clean before I try to assume a role in society of any type."

Defendant also suggested, as did his counsel, the alternative of a minimum sentence. It is doubtful that the supreme court intended that such a

literal interpretation be given to its words "file a petition" in *Kuesis* so as to disregard defendant's oral requests under the foregoing facts. We therefore hold that defendant affirmatively petitioned the trial court for treatment and should have been considered for such treatment. The record being devoid of any consideration thereof by the trial court mandates that a new sentencing hearing be conducted.

■■ The State argues that defendant is not eligible for treatment under the Act because under section 5—5—3(c)(2)(F) of the Corrections Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(c)(2)(F)), he is ineligible for probation or parole because of his 1976 conviction for robbery, a Class 2 felony (Ill. Rev. Stat. 1979, ch. 38, par. 18—1). Notwithstanding his ineligibility for parole or probation, however, as the supreme court held in *People v. Teschner* (1980), 81 Ill. 2d 187, 407 N.E.2d 49, such a defendant could still be eligible for treatment if he met the threshold requirements set forth in section 8 of the Act. The probation and parole requirements under the Corrections Code were not to be superimposed onto the Act as additional preconditions to treatment, absent legislative action. 81 Ill. 2d 187, 193.

■■ Effective September 20, 1979, however, section 10 was legislatively amended to provide that "If * * * treatment is inconsistent with section 5—6—1(a) [of the Corrections Code], the court shall proceed to pronounce sentence as in other cases" and therefore cannot invoke the alternative provided by the Act. (Ill. Rev. Stat. 1979, ch. 91½, par. 120.10.) Section 5—6—1(a) of the Corrections Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)) in turn incorporates the probation and parole eligibility requirements of section 5—5—3 discussed above. Therefore, the September 20, 1979, amendment now does superimpose the parole and probation eligibility requirements of the Corrections Code onto the Act.

Defendant at bar was convicted of a burglary which occurred prior to the 1979 amendment, but was sentenced subsequent to its effective date. The State asserts that because defendant was sentenced after the effective date of the amendment, the amendment rather than *Teschner* applies; defendant is therefore precluded from treatment because of his Class 2 felony conviction within the preceding 10 years. Defendant responds that because the crime with which he was charged and convicted occurred prior to the new amendment, he was entitled to be sentenced under the law which existed at that date if he so elects. We agree. A defendant may elect to be sentenced under either the law in effect at the time the offense was committed or the law in effect at the time of sentencing. (*People v. Hollins* (1972), 51 Ill. 2d 68, 71, 280 N.E.2d 710; *People v. Parish* (1980), 82 Ill. App. 3d 1028, 1033, 403 N.E.2d 725; *People v. Finley* (1980), 82 Ill. App. 3d 307, 402 N.E.2d 769.) Defendant here was entitled to make that election.

Under the foregoing considerations we affirm the conviction, vacate the sentence, and remand for a new sentencing hearing.

Affirmed in part, vacated in part, and remanded.

DOWNING and PERLIN, JJ., concur.